USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-2018 UNITED STATES OF AMERICA, Appellee, v. HECTOR De ALBA PAGAN, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, U.S. District Judge] ___________________ _________________________ Before Selya, Boudin and Stahl, Circuit Judges. ______________ _________________________ Jorge L. Arroyo, by appointment of the Court, for appellant. _______________ Jose A. Quiles-Espinosa, Senior Litigation Counsel, with ________________________ whom Guillermo Gil, United States Attorney, and Rosa Emilia ______________ ____________ Rodriguez-Velez, Assistant United States Attorney, were on brief, _______________ for the United States. _________________________ August 26, 1994 _________________________ SELYA, Circuit Judge. On March 22, 1993, defendant- SELYA, Circuit Judge. ______________ appellant Hector De Alba Pagan pled guilty to five counts of an indictment charging him, and twenty-three other persons, with various drug-trafficking offenses. On August 5, 1993, the district court, after first denying defendant's pro se motion to ___ __ withdraw his earlier plea,1 sentenced him to a lengthy prison term. This appeal followed. Defendant makes several points. Distilled, these points reduce to three broad issues. We address those issues seriatim. ________ I. I. __ Plea Withdrawal Plea Withdrawal _______________ Defendant contends that the district court erred in refusing to allow him to withdraw his guilty plea. We review a district court's decision to grant or deny a request to withdraw a guilty plea solely for abuse of discretion. See United States ___ _____________ v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994); United _______________ ______ States v. Doyle, 981 F.2d 591, 594 (1st Cir. 1992); United States ______ _____ _____________ v. Pellerito, 878 F.2d 1535, 1538 (1st Cir. 1989). Applying that _________ standard, we discern no error. It is settled that a motion to withdraw a guilty plea, made before sentencing, can be granted "only upon an affirmative showing of a `fair and just reason.'" Parrilla-Tirado, 22 F.3d _______________ ____________________ 1Defendant filed his motion to withdraw pro se, although, at ___ __ the time, he was represented by counsel. In the same motion, he asked the court to discharge his lawyer and appoint a successor. The court denied this request as well. On appeal, defendant is represented by a newly appointed attorney. 2 at 371 (quoting Fed. R. Crim. P. 32(d)). The burden of persuasion rests with the defendant. See id. In determining ___ ___ whether this burden has been carried, an inquiring court must consider the totality of the circumstances, focusing especially on four factors, namely, (1) the plausibility of the reasons prompting the requested change of plea; (2) the timing of the defendant's motion; (3) the existence or nonexistence of an assertion of innocence; and (4) whether the defendant's plea realistically may be characterized as legally suspect, say, because it was involuntary or otherwise in derogation of the requirements imposed by Fed. R. Crim. P. 11. See id. at 371; ___ ___ Doyle, 981 F.2d at 594; Pellerito, 878 F.2d at 1537. If, after _____ _________ due consideration, the defendant appears to have the better of this assessment, the court must then mull an additional factor: prejudice to the government. See Parrilla-Tirado, 22 F.3d at ___ _______________ 371; United States v. Kobrosky, 711 F.2d 449, 455 (1st Cir. ______________ ________ 1983). Here, we do not reach the question of prejudice, for the defendant's claim, when measured by virtually every pertinent test, fails at the earlier stage. We need not wax longiloquent. Defendant asserts three reasons for seeking to withdraw his plea, but two of them are hopelessly infirm and do not warrant discussion. His quest rises or falls, therefore, on his claim that, when he pleaded guilty, he "did not understand that, as a consequence of his plea, he would be sentenced [based partly] on relevant conduct that went beyond that which he admitted to in his statements to the court 3 [at the change-of-plea hearing]." Appellant's Brief at 16-17. On this chiaroscuro record, we cannot find that the lower court erred in refusing to credit this professed reason. After all, the court made it very clear to defendant that he would be sentenced in accordance with the provisions of the sentencing guidelines, informed him of the maximum possible punishment, asked him about promises or assurances beyond those limned in the plea agreement (defendant said there were none), and made certain that defendant was told quite pointedly that the matter of relevant conduct would be determined at sentencing. To be sure, defendant claims to have had a subjective understanding to the contrary.2 But where, as here, a court expressly retains the power to determine relevant facts bearing on sentencing under the guidelines, "a defendant cannot claim . . . that the plea is rendered involuntary when the court exercises this power." United States v. Williams, 919 F.2d 1451, 1456 _____________ ________ (10th Cir. 1990), cert. denied, 499 U.S. 968 (1991); accord _____ ______ ______ United States v. Stephens, 906 F.2d 251, 254 (6th Cir. 1990). In _____________ ________ short, a defendant's lament that he misjudged the consequences of his guilty plea, without more, is not a fair and just reason for setting the plea aside. By the same token, the fact that a defendant misapprehends the likely guideline sentencing range does not constitute a fair and just reason for withdrawing a ____________________ 2Defendant asserts that a principal reason for this subjective belief lay in his lawyer's statements to him, abetted by his lawyer's failure to tell him of comments made by the judge at sidebar. These circumstances are more directly pertinent to the claim of ineffective assistance, see infra Part II. ___ _____ 4 guilty plea. See Williams, 919 F.2d at 1456; United States v. ___ ________ _____________ Bradley, 905 F.2d 359, 360 (11th Cir. 1990); Stephens, 906 F.2d _______ ________ at 253; United States v. Jones, 905 F.2d 867, 868 (5th Cir. ______________ _____ 1990); United States v. Sweeney, 878 F.2d 68, 69-71 (2nd Cir. _____________ _______ 1989).3 Although the absence of a plausible reason itself often constitutes an insurmountable obstacle to a defendant's plea- withdrawal effort, we note that, here, most of the remaining factors involved in the Parrilla-Tirado test also counsel in _______________ favor of upholding the district court's ruling. Beyond noting two vital pieces of information that defendant has yet to assert his innocence, and that we have been unable to find any substantial defect in the Rule 11 proceedings we think that it would serve no useful purpose to cite book and verse. It suffices to say that the district court did not abuse its discretion in denying defendant's plea-withdrawal motion. II. II. ___ Ineffective Assistance Ineffective Assistance ______________________ The Sixth Amendment requires that persons accused of crimes shall receive the benefit of counsel for their defense. See U.S. Const., Amend. VI. The defendant maintains that he was ___ denied this boon because his trial counsel acted both ____________________ 3Here, no one supplied the defendant with an estimate of the guideline sentencing range during the change-of-plea hearing. We note in passing, however, that courts have held that even the furnishing of an incorrect estimate to defendant by his own _________ counsel would not afford a basis for permitting him to withdraw his earlier plea. See, e.g., Williams, 919 F.2d at 1456; ___ ____ ________ Stephens, 906 F.2d at 253. ________ 5 irresponsibly and below an acceptable standard of proficiency. We do not think this plaint is ripe for appellate review. "We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." United States v. Mala, 7 F.3d 1058, 1063 (1st _____________ ____ Cir. 1993) (collecting cases), cert. denied, 114 S. Ct. 1839 _____ ______ (1994). Here, defendant's complaint anent trial counsel's performance is utterly factbound, and cannot intelligently be evaluated on the sparse record that is now before us. Nonetheless, the rule reiterated in Mala should be ____ construed in a practical, commonsense fashion. The chief reason that we do not undertake first-instance review of prototypical ineffective assistance claims is prudential in nature. As we said in Mala: ____ Since claims of ineffective assistance involve a binary analysis the defendant must show, first, that counsel's performance was constitutionally deficient and, second, that the deficient performance prejudiced the defense, see Strickland v. Washington, 466 ___ __________ __________ U.S. 668, 687 (1984) such claims typically require the resolution of factual issues that cannot efficaciously be addressed in the first instance by an appellate tribunal. In addition, the trial judge, by reason of his familiarity with the case, is usually in the best position to assess both the quality of the legal representation afforded to the defendant in the district court and the impact of any shortfall in that representation. Under ideal circumstances, the court of appeals should have the benefit of this evaluation; elsewise, the court, in effect, may be playing blindman's buff. 6 Id. (some internal citations omitted). ___ Be that as it may, the case at bar possesses a procedural wrinkle: it must, in all events, be remanded to the district court for further proceedings, see infra Part III. That ___ _____ circumstance, coupled with the fact that the claim of ineffective assistance is at least colorable, impels us to direct the district court, on remand, to hold an evidentiary hearing in advance of resentencing to determine whether defendant's conviction ought to be set aside on Sixth Amendment grounds. Cf., e.g., United States v. Rodriguez Rodriguez, 929 F.2d 747, ___ ____ ______________ ____________________ 753 (1st Cir. 1991) (per curiam) (directing district court on remand to conduct an inquiry into defendant's allegations of misconduct by counsel); Mack v. Smith, 659 F.2d 23, 26 (5th Cir. ____ _____ 1981) (per curiam) (remanding for evidentiary hearing to determine if failure to file a timely appeal resulted from ineffectiveness of counsel). Of course, we take no view of the merits of defendant's Sixth Amendment claim. III. III. ____ Sentencing Sentencing __________ The defendant asserts a salmagundi of grounds in support of his contention that the district court erred in the imposition of sentence. We agree that the sentencing proceedings were irremediably flawed and must be conducted afresh. The right of allocution affords a criminal defendant the opportunity to make a final plea to the judge on his own behalf prior to sentencing. See United States v. Behrens, 375 ___ _____________ _______ 7 U.S. 162, 165 (1963). Ancient in law, allocution is both a rite and a right. It is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances. See United States v. Barnes, 948 ___ _____________ ______ F.2d 325, 328 (7th Cir. 1991). Furthermore, allocution "has value in terms of maximizing the perceived equity of the process." Id. (citation and internal quotation marks omitted). ___ While it can be argued that the right of allocution has lost some of its stature since the advent of the sentencing guidelines the guidelines, we might add, have been blamed for much worse allocution remains deeply embedded in our criminal jurisprudence. Indeed, the right is incorporated in the Criminal Rules, which provide in pertinent part that, prior to imposing a sentence, the judge "shall address the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence." Fed. R. Crim. P. 32(a)(1)(C). If the defendant responds affirmatively to this invitation, he must then be permitted to speak. See, e.g., ___ ____ Barnes, 948 F.2d at 331. ______ In this case, the court below did not specifically address the defendant and make the inquiry that the rule requires. Despite this apparent failure to heed the rule's command, the government argues that the omission, in itself, is not dispositive. Rather, the government strives to persuade us that the totality of the circumstances surrounding the sentencing hearing, including some specific interaction between the 8 defendant and the judge, constituted substantial compliance with the rule. We are not convinced. As we have previously observed, allocution continues to play a salient role in criminal cases. Thus, while we do not attach talismanic significance to any particular string of words, a defendant must at least be accorded the functional equivalent of the right. And, moreover, functional equivalency should not lightly be assumed. Though there may be cases in which a defendant, despite the absence of the focused inquiry that the language of the rule requires, can be said to have received its functional equivalent, such cases will be few and far between. Doubts should be resolved in the defendant's favor. To achieve functional equivalency (or, put another way, substantial compliance with the imperative of Rule 32 (a)(1)(C)), it is not enough that the sentencing court addresses a defendant on a particular issue, see, e.g., United States v. Walker, 896 ___ ____ _____________ ______ F.2d 295, 300-01 (8th Cir. 1990), affords counsel the opportunity to speak, see, e.g., United States v. Posner, 868 F.2d 720, 724 ___ ____ ______________ ______ (5th Cir. 1989), or hears the defendant's specific objections to the presentence report, see, e.g., United States v. Phillips, 936 ___ ____ _____________ ________ F.2d 1252, 1255-56 (11th Cir. 1991). Rather, the court, the prosecutor, and the defendant must at the very least interact in a manner that shows clearly and convincingly that the defendant knew he had a right to speak on any subject of his choosing prior to the imposition of sentence. See Green v. United States, 365 ___ _____ _____________ U.S. 301, 304-05 (1961). 9 Viewed against this backdrop, we cannot find functional equivalency or substantial compliance here. Although the defendant did engage in discussion of specific points at the disposition hearing, the court did not, either explicitly or by fair implication, invite him to speak on a broader, more wide- ranging level. Nor does the record furnish any other basis for a finding that defendant knew of his right to allocute. In this case, then, the court's failure to comply with Rule 32(a)(1)(C) constituted reversible error.4 We say "reversible" because, in this type of situation, we cannot dismiss the error as harmless. As early as 1689, the common law acknowledged that a court's failure to invite a defendant to speak before sentencing required reversal. See ___ Barnes, 948 F.2d at 328 (citing Anonymous, 3 Mod. 265, 266, 87 ______ _________ Eng.Rep. 175 (K.B. 1689)). This axiom has survived the passage of time. It is settled that a failure to comply with the mandate of Rule 32(a)(1)(C) ordinarily requires vacation of the sentence imposed without a concomitant inquiry into prejudice. See United ___ ______ States v. Maldonado, 996 F.2d 598, 599 (2d Cir. 1993); Barnes, ______ _________ ______ 948 F.2d at 332; Phillips, 936 F.2d at 1256; Walker, 896 F.2d at ________ ______ 301; Posner, 868 F.2d at 724; United States v. Buckley, 847 F.2d ______ _____________ _______ 991, 1002 (1st Cir. 1988), cert. denied, 488 U.S. 1015 (1989); _____ ______ United States v. Navarro-Flores, 628 F.2d 1178, 1184 (9th Cir. ______________ ______________ ____________________ 4Under Rule 32(a)(1)(C), it is the court's obligation to invite the defendant's remarks. Thus, a defendant ordinarily will not be held to have waived the right of allocution merely because he did not seek to address the court. See Barnes, 948 ___ ______ F.2d at 330-31; see also Walker, 896 F.2d at 300. ___ ____ ______ 10 1984); cf. United States v. Miller, 849 F.2d 896, 897-98 (4th ___ ______________ ______ Cir. 1988) (remanding for failure to meet strictures of Fed. R. Crim. P. 32(a)(1)(A) and (C)). This is so precisely because the impact of the omission on a discretionary decision is usually enormously difficult to ascertain.5 In line with this virtually unbroken skein of authorities, we hold, that if the trial court fails to afford a defendant either the right of allocution conferred by Rule 32(a)(1)(C) or its functional equivalent, vacation of the ensuing sentence must follow automatically. So it is here.6 We affirm the district court's denial of defendant's _______________________________________________________ plea-withdrawal motion, but vacate defendant's sentence and _________________________________________________________________ remand for further proceedings as described herein. So ordered. _______________________________________________________________ ____________________ 5This is not necessarily so, of course, when the sentence is the minimum possible. Thus, the Ninth Circuit has undertaken harmless-error analysis in certain cases in which a defendant has been denied his right to allocution, limited, however, to instances in which a sentence is "already as short as it could possibly be under the Guidelines." United States v. Carper, 24 _____________ ______ F.3d 1157, 1162 (9th Cir. 1994); see also United States v. ___ ____ ______________ Ortega-Lopez, 988 F.2d 70, 72-73 (9th Cir. 1993). The case at ____________ hand is not such a case. 6Because further proceedings are required, we do not reach the remaining sentence-related issues raised on appeal. We assume that, at the appropriate juncture, the district court will traverse that ground and make new findings on an augmented record. 11